FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   APR 22 2011   ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

E*TRADE SECURITIES, LLC,

        Plaintiff in Interpleader,

        v.

MYRON WEINER; the SECURITIES and
EXCHANGE COMMISSION; the UNITED STATES
ATTORNEY for the EASTERN DISTRICT of NEW
YORK; and JOHN and JANE DOES 1-100,

        Defendants in Interpleader.

------------------------------------------------------------- X

Case No.:



**VERIFIED COMPLAINT
IN INTERPLEADER**

**SUMMONS ISSUED**

Interpleader Plaintiff E*TRADE Securities, LLC ("E*TRADE"), by and through its counsel, DLA Piper LLP (US) brings this Interpleader action pursuant to Title 28 United States Code, Section 1335 to determine who should receive the proceeds of the sale of approximately eight million shares of SpongeTech Delivery Systems, Inc. ("SpongeTech") common stock realized in the fall of 2009 in the account of Defendant in Interpleader Myron Weiner ("Weiner"). His sales of SpongeTech stock netted approximately $1.6 million (the "Funds") shortly before the delisting of SpongeTech by the NASDAQ, the indictment by Defendant in Interpleader the United States Attorney for the Eastern District of New York (the "USA-EDNY") of certain SpongeTech principals, and the commencement of an enforcement action by Defendant in Interpleader the Securities and Exchange Commission (the "SEC") against these same SpongeTech principals, among others, which identifies Weiner as the recipient of SpongeTech stock that improperly did not contain restrictive legends.

As a result of Interpleader Plaintiff E*TRADE's internal compliance procedures, it became aware of numerous suspicious circumstances surrounding Weiner's trading in

SpongeTech and froze his account pending the resolution of its own internal investigation. Since that time, Weiner has brought a FINRA arbitration seeking the release by E*TRADE of the Funds and E*TRADE has been made aware of other actual or possible claims to the Funds. Accordingly, E*TRADE brings this Interpleader action and respectfully asks this Court to determine which of these competing claimants is entitled to possession of the Funds, and alleges as follows:

## JURISDICTION

1.     This Court has jurisdiction over this action pursuant to Title 28, United States Code, Section 1331 and 1335.

2.     Venue in this jurisdiction is proper pursuant to Title 28, United States Code, Section 1391(b) and 1397.

## PARTIES AND OTHER RELEVANT ENTITIES

3.     Interpleader Plaintiff E*TRADE Securities LLC, a Delaware limited liability company, is a retail broker-dealer located throughout the United States, and is the holder of the Funds that were the proceeds of the sale of 8 million shares of SpongeTech stock.

4.     Interpleader Defendant Myron Weiner is the seller of the eight million shares of SpongeTech stock.  He resides in Hoboken, New Jersey.

5.     Interpleader Defendant SEC is the federal agency primarily responsible for overseeing and regulating the United States securities markets.  The SEC filed an enforcement action in this Court against SpongeTech alleging various fraudulent behaviors, described in more detail below, and seeking disgorgement and other monetary and injunctive relief from the defendants in that action (the "Enforcement Action").  The SEC may have a claim to the Funds.

6.    Interpleader Defendant USA-EDNY is an official of the Department of Justice, a governmental agency, who indicted several individuals involved in the alleged SpongeTech scheme (the "SpongeTech Indictments") and may have a claim to the Funds.

7.    Interpleader Defendants John and Jane Does 1-100 are buyers of some or all of the eight million shares of SpongeTech stock sold by Myron Weiner, who may have claims against Weiner, arising out of his sale of the shares and are located in various states throughout the United States of America.  Upon information and belief, some of the buyers reside in the State of New York.

8.    SpongeTech is a Delaware corporation, with its principal place of business in New York, New York.  SpongeTech's common stock was quoted on the Over-The-Counter Bulletin Board from 2006 until the SEC suspended SpongeTech trading on October 5, 2009.

9.    Michael Metter ("Metter") is SpongeTech's president and chief operating officer. Metter is currently a defendant in *SEC v. SpongeTech Delivery Systems, Inc., et al.,* 10-cv-2031, currently pending in this Court, which alleges a fraudulent scheme to, among other things, inflate the price of SpongeTech common stock and sell and distribute restricted SpongeTech common stock.  Metter is also a criminal defendant in *United States v. Michael Metter and Steven Moskowitz,* 10-cr-00600, currently pending in this Court, which alleges a criminal fraud scheme to, among other things, sell and distribute restricted SpongeTech common stock.

10.    Steven Moskowitz ("Moskowitz") is SpongeTech's chief operating officer, chief financial officer, chief accounting officer, corporate secretary, and a member of its board of directors.  Moskowitz is also a defendant in both *SEC v. SpongeTech* and *United States v. Michael Metter and Steven Moskowitz.*

3

11.     RM Enterprises International, Inc. ("RM Enterprises") is a Delaware corporation with its principal place of business in New York, New York. RM Enterprises is SpongeTech's majority shareholder and, on information and belief, RM Enterprises' common stock is controlled by Weiner, Metter, and Moskowitz. RM Enterprises is a defendant in the SEC Enforcement action.

## **FACTUAL BACKGROUND**

12.     On or about August 19, 2009, Weiner contacted E*TRADE for the purpose of opening two accounts at E*TRADE, where he could deposit share certificates for ten million shares of SpongeTech stock. When he was trying to open these accounts, Weiner assured E*TRADE that he did not intend to trade his SpongeTech stock.

13.     In reliance on his promises that he had no intention of selling his stock, E*TRADE allowed Weiner to open two accounts into which he deposited his SpongeTech common stock that did not have restrictive legends.

14.     From September 3, 2009 through September 15, 2009, however, Weiner violated his prior representations to E*TRADE and proceeded to sell eight million shares of the SpongeTech stock that he promised to hold in his account. The Funds realized from these sales totaled approximately $1,615,000.

15.     In early October 2009, Mr. Weiner attempted to wire the Funds realized from these SpongeTech sales out of his E*TRADE account.

16.     E*TRADE, however, found the size and pattern of Mr. Weiner's deposits, trading, and attempted withdrawals to be suspicious. Accordingly, E*TRADE stopped the wire requested by Weiner and commenced an investigation of Weiner's suspicious trading. As a result of that investigation, E*TRADE restricted both of Mr. Weiner's accounts on October 5, 2009.

4

17.     On that same day, October 5, 2009, the SEC suspended trading of SpongeTech's common stock.

18.     Following E*TRADE's freezing of Weiner's accounts, E*TRADE requested further confirmation that Weiner's SpongeTech shares were legitimately and properly issued without trading restriction.  To date, E*TRADE has not received this confirmation in a legally cognizable or reasonably reliable form.

19.     Instead, Weiner or his agents have provided documentation that is internally inconsistent or contradicted by other documents in E*TRADE's possession.

20.     Before E*TRADE was able to complete its investigation of the circumstances surrounding Weiner's acquisition, and subsequent sale, of the SpongeTech shares, Weiner commenced a FINRA arbitration, captioned FINRA Dispute Resolution Arbitration Number 10-00918 Myron Weiner vs. E*TRADE Securities, LLC.  Weiner filed a Statement of Claim on February 25, 2010, alleging E*TRADE was illegally freezing his account and holding his assets (the "FINRA Arbitration").  The FINRA Arbitration is ongoing.

The SEC Brings an Enforcement Action Against SpongeTech and Its Principals

21.     Less than three months after the filing of the Statement of Claim, on May 5, 2010, the SEC filed the Enforcement Action against SpongeTech and others alleging that, among other things, SpongeTech CEO, Michael Metter, and SpongeTech CFO Steven Moskowitz created fictional customers and grossly exaggerated sales figures through dozens of falsified press releases and fraudulent SEC filings to pump up demand for SpongeTech stock.

22.     The Enforcement Action alleges that after several years of relatively little business with a single customer, Metter and Moskowitz began to portray a more promising and misleading picture of SpongeTech's business.

23.     According to the SEC complaint, SpongeTech issued dozens of phony press releases hyping increasingly larger, but fictitious, sales orders and revenues.  These press releases fraudulently exaggerated the demand for pre-soaped sponges by indicating millions of dollars in sales, orders, business, and revenue from five primary customers that purportedly accounted for ninety-nine percent of SpongeTech's business.  According to the Enforcement Action, however, those customers did not exist.

24.     After flooding the market with false information to fraudulently inflate the stock price, the SEC alleges that Metter, Moskowitz and SpongeTech dumped approximately 2.5 billion shares by illegally selling them to the public through affiliated entities and unregistered transactions.

25.     The SEC also charged two of SpongeTech's former attorneys, Jack Halperin and Joel Pensley, with participating in the fraud scheme by sending baseless opinion letters that certain SpongeTech stock was freely tradable when in fact it was restricted.  Also charged were stock promoter George Speranza ("Speranza") and RM Enterprises, which is owned by Metter, Moskowitz and Weiner and was allegedly a vehicle through which SpongeTech shares were improperly distributed.

26.     The SEC's Enforcement Action further alleges that Metter, Moskowitz, SpongeTech, and RM Enterprises used false and baseless opinion letters in an effort to improperly distribute restricted shares of SpongeTech stock to the public.

27.     The SEC's Enforcement Action complaint also names Mr. Weiner in paragraph 96 in connection with these alleged wrongdoings of SpongeTech's principals stating:

> Similarly, on or about June 29, 2009 and July 10,  2009, Moskowitz· instructed Worldwide Stock to issue 10,000,000 restricted SpongeTech shares to RM Enterprises in Share Certificate Nos. 3901 and 3902 and No. 4001. On July 8, 2009

6

and July 15, 2009, Moskowitz used Halperin's letters to instruct Worldwide Stock to remove restrictive legends from those share certificates and transfer the now unlegended shares to another person, *Myron Weiner*. RM Enterprises had held the shares for approximately nine days or fewer. (emphasis added)

## Metter And Moskowitz Are Indicted For Their Activities Involving SpongeTech Stock

28.     Approximately three months later, the USA-EDNY indicted Metter and Moskowitz.

29.     On October 14, 2010, a superseding indictment was unsealed against Metter, Moskowitz, and five other defendants in the Eastern District of New York.

30.     The superseding indictment charges Metter and Moskowitz, as well as former SpongeTech employees Andrew Tepfer, Seymour Eisenberg, Thomas Cavanagh and Frank Nicolois and SpongeTech vendor Speranza.

31.     The superseding indictment alleges that between January 2007 and May 2010, those charged and others executed a fraudulent scheme to publicly report materially overstated SpongeTech sales figures to create artificial demand and increase share price and trading volume of the common stock.   This scheme involved, among other things, the issuance of restricted stock, the subsequent sale of unregistered stock and the use of fraudulent legal opinions that falsely claimed exemptions from SEC registration.

## Competing Claims for the Funds

32.     Given the existence of the Enforcement Action, the pending criminal cases in the Eastern District of New York, and the underlying events giving rise to both of them, as well as the similarity of Weiner's SpongeTech trading to these allegedly unlawful schemes, there are multiple parties who have, or may have, competing claims to the Funds currently held by E*TRADE.

33.     Given these competing claims to the Funds, E*TRADE cannot determine which of the Defendants in Interpleader are entitled to possession of the Funds.

34.     E*TRADE, therefore, files this Interpleader action in good faith and without any collusion with any of the parties hereto. E*TRADE claims no interest in the Funds frozen from Weiner. E*TRADE acts to restrain the dissipation of the Funds by Weiner.

35.     The named Interpleader Defendants are actual or potential claimants to the Funds. In addition, there may be other individuals who are potential claimants who, it is contemplated, will be notified of this proceeding and provided with an opportunity to submit claims.

36.     The Interpleader Plaintiff itself has no claims to the Funds and has no stake in how the Court decides to distribute the Funds.

## **Prayer for Relief**

Wherefore, E*TRADE prays for judgment against Defendants in Interpleader, and each of them, as follows:

1.     That the Court stay the FINRA Arbitration between E*TRADE and Mr. Weiner until a decision has been rendered in this Interpleader;

2.     That the Defendants in Interpleader and each of them required to interplead and litigate among themselves their claims to the proceeds described;

3.     Restraining all defendants and any other claimants from filing any action against E*TRADE for recovery of the Funds in question;

4.     That the Court determine and enter an order setting forth the proper recipients of the Funds;

5.     That E*TRADE be awarded its costs in bringing this action to be determined by the Court and be paid out of the Funds;

6.     Discharging E*TRADE from and against any liability to any Interpleader Defendants or any other person;

7.     E*TRADE be dismissed from this action with prejudice following payment of the Funds into the registry of the Court; and

8.     For such and further relief as the Court deems just and equitable under the circumstances.

DATED:     April 22, 2011
           New York, New York

DLA PIPER LLP (US)

By: _____
    Caryn G. Schechtman
    Joshua S. Sohn
    1251 Avenue of the Americas
    New York, New York 10020
    (212) 335-4500 (Telephone)
    (212) 335-4501 (Facsimile)
    caryn.schechtman@dlapiper.com
    joshua.sohn@dlapiper.com

*Attorneys for Plaintiff in Interpleader*

9

## **VERIFICATION**

I, Cathleen Seneca, pursuant to 28 U.S.C. § 1746 declare:

I am employed in the Brokerage Compliance Department of E*TRADE Securities, LLC ("E*TRADE"), and I am duly authorized to sign this Verification on behalf of E*TRADE.

I have read the foregoing Complaint in Interpleader. I am informed there is no single employee of E*TRADE who has personal knowledge of all of these matters, and that this Complaint is based on information assembled by E*TRADE, its employees, and its attorneys. I am informed and believe that, as of the date of filing of the Complaint, the information contained therein is true. As to those matters within my own personal knowledge, the Complaint is also true as of its date of filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Verification on April 21, 2011, at Jersey City, New Jersey.

Cathleen Seneca

10